## MASTER SETTLEMENT AGREEMENT

This Master Settlement Agreement (this "**Agreement**") is entered into as of November 13, 2009 by and among the following parties:

A.    all of the parties to the McGreevey Settlement Agreement (capitalized terms as defined below unless otherwise expressly provided), comprising Margaret A. McGreevey, Thomas G. Taylor, Joanne Barkell, Patrick Burton, Rosalie Burton, James Dudley, Joseph Martelli, and Lawrence A. Lombardo, collectively on behalf of the McGreevey Settlement Class, and the Plan Trust, Robert P. Gannon, Jerrold P. Pederson, Michael J. Meldahl, Kay Foster, Carl Lehrkind, III, Deborah D. McWhinney, Tucker Hart Adams, Alan F. Cain, John G. Connors, R.D. Corette, John R. Jester, Michael E. Zimmerman, John D. Haffey, Noble E. Vosburg, PPL Montana, LLC, Goldman, Sachs & Co., The Goldman Sachs Group, Inc., Westmoreland Coal Company, Westmoreland Mining LLC, BBI Power Corporation, CES Acquisition Corp., Milbank, Tweed, Hadley & McCloy LLP, NorthWestern Corporation, Clark Fork & Blackfoot LLC, AEGIS, Twin City Fire Insurance Company, and Federal Insurance Company (collectively, the "**McGreevey Parties**"); and

B.    all of the parties to the Plan Trust Settlement Agreement, comprising the Plan Trust, Goldman, Sachs & Co., The Goldman Sachs Group, Inc., and Milbank, Tweed, Hadley & McCloy LLP (collectively, the "**Plan Trust Parties**"); and

C.    all of the parties to the Securities Settlement Agreement, comprising Gerald R. Vogt and William M. Klaess, collectively on behalf of the Securities Settlement Class, Robert P. Gannon, the Plan Trust, AEGIS, Twin City Fire

- 1 -

Insurance Company, and Federal Insurance Company (collectively, the "**Securities Parties**"); and

D.      all of the parties to the ERISA Settlement Agreement, comprising Ross Buckingham, Warren Bellcour, Kim Moran, Torlief Pederson, Charles Porter, collectively on behalf of the ERISA Settlement Class, and Robert P. Gannon, Jerrold P. Pederson, Pamela K. Merrell, Ellen M. Senechal (n/k/a Ellen M. Marbut), R.W. Cope, Kay Foster, Carl Lehrkind, III, Deborah D. McWhinney, Tucker Hart Adams, Alan F. Cain, John G. Connors, R.D. Corette, John R. Jester, Noble E. Vosburg, the Northern Trust Company, and Federal Insurance Company (collectively, the "**ERISA Parties**"); and

E.      all of the parties to the Bankruptcy Court D&O Settlement Agreement, comprising Brent C. Williams, solely in his capacity as Plan Trustee for the Plan Trust, Robert P. Gannon, Jerrold P. Pederson, Michael Zimmerman, Carl Lehrkind, III, Alan F. Cain, John R. Jester, AEGIS, Twin City Fire Insurance Company, and Federal Insurance Company (collectively, the "**Bankruptcy Court Parties**"); and

F.      all of the parties to the Allocation Agreement, comprising Margaret A. McGreevey, Thomas G. Taylor, Joanne Barkell, Patrick Burton, Rosalie Burton, James Dudley, Joseph Martelli, and Lawrence A. Lombardo, collectively on behalf of the McGreevey Settlement Class, and Brent C. Williams, solely in his capacity as Plan Trustee for the Plan Trust, NorthWestern Corporation, and Clark Fork & Blackfoot LLC (collectively, the "**Allocation Agreement Parties**"); and

G.      all of the parties to the Insurance Settlement Agreement, comprising Robert P. Gannon, Jerrold P. Pederson, Michael Meldahl, Kay Foster, Carl

Lehrkind, III, Deborah D. McWhinney, Tucker Hart Adams, Alan F. Cain, John G. Connors, R.D. Corette, John R. Jester, Michael E. Zimmerman, John D. Haffey, Noble E. Vosburg, AEGIS, Twin City Fire Insurance Company, Federal Insurance Company, NorthWestern Corporation, Clark Fork & Blackfoot LLC, the Plan Trust and all other persons or entities who are or claim to be insureds under or beneficiaries of the Insurance Settlement Agreement (the "**Insurance Agreement Parties**" and, together with the McGreevey Parties, the Plan Trust Parties, the Securities Parties, the ERISA Parties, the Allocation Agreement Parties and the Bankruptcy Court Parties, the "**Master Settlement Agreement Parties**").

## RECITALS

WHEREAS, the McGreevey Parties have executed an Agreement of Compromise and Settlement -- McGreevey Litigation, dated as of November 13, 2009 and attached hereto as Exhibit A (the "**McGreevey Settlement Agreement**"), that constitutes a compromise of matters that are in dispute in connection with the McGreevey Actions; and

WHEREAS, the Plan Trust Parties have executed an Agreement of Compromise and Settlement -- Plan Trust Action, dated as of November 13, 2009 and attached hereto as Exhibit B (the "**Plan Trust Settlement Agreement**"), that constitutes a compromise of matters that are in dispute in connection with the Plan Trust Action; and

WHEREAS, the Securities Parties have executed the Touch America Securities Stipulation of Settlement, dated as of November 13, 2009 and attached hereto

as <u>Exhibit C</u> (the "**Securities Settlement Agreement**"), that constitutes a compromise of matters that are in dispute in connection with the Securities Action; and

WHEREAS, the ERISA Parties have executed an Agreement of Compromise and Settlement -- ERISA Action, dated as of November 13, 2009 and attached hereto as <u>Exhibit D</u> (the "**ERISA Settlement Agreement**"), that constitutes a compromise of matters that are in dispute in connection with the ERISA Action; and

WHEREAS, the Bankruptcy Court Parties have executed an Agreement of Compromise and Settlement -- Bankruptcy Court D&O Action, dated as of November 13, 2009 and attached hereto, without exhibits, as <u>Exhibit E</u> (the "**Bankruptcy Court D&O Settlement Agreement**"), that constitutes a compromise of matters that are in dispute in connection with the Bankruptcy Court D&O Action; and

WHEREAS, the Allocation Agreement Parties have executed an Agreement of Compromise and Settlement – Bankruptcy Court Shareholder Action, dated as of November 13, 2009 and attached hereto, without exhibits, as <u>Exhibit F</u> (the "**Allocation Agreement**"), that constitutes an allocation of certain proceeds among the Allocation Agreement Parties should they receive any proceeds pursuant to the McGreevey Settlement Agreement, the Plan Trust Settlement Agreement or the Bankruptcy Court D&O Settlement Agreement, and constitutes a settlement of the Bankruptcy Court Shareholder Action; and

WHEREAS, the Insurance Agreement Parties have executed the Insurance Settlement Agreement, dated as of November 13, 2009 and attached hereto as <u>Exhibit G</u> (the "**Insurance Settlement Agreement**" and, together with the McGreevey Settlement Agreement, the Plan Trust Settlement Agreement, the Securities Settlement Agreement,

- 4 -

the ERISA Settlement Agreement, the Bankruptcy Court D&O Settlement Agreement, and the Allocation Agreement, the "**Settlement Agreements**"), that constitutes a release of certain matters and policies of insurance referenced therein; and

WHEREAS, notwithstanding anything in the various Settlement Agreements to the contrary, each of the Master Settlement Agreement Parties desires certain provisions of each of the Settlement Agreements to go into effect concurrently; and

WHEREAS, the Master Settlement Agreement Parties have entered into this Agreement to ensure the concurrent effectiveness of such certain provisions;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the Master Settlement Agreement Parties, subject to approval by the Montana Court pursuant to Federal Rule of Civil Procedure 23 and the Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019, in consideration of the benefits flowing to the Master Settlement Agreement Parties from this Agreement, as follows:

## DEFINITIONS

1.     "**Actions**" means, collectively, the McGreevey Actions, the Plan Trust Action, the Securities Action, the ERISA Action, the Bankruptcy Court D&O Action, and the Bankruptcy Court Shareholder Action.

2.     "**AEGIS**" means Associated Electric & Gas Insurance Services Limited.

3.     "**AEGIS Policy**" means Associated Electric & Gas Insurance Services Limited Director and Officer Liability Policy, Policy No. D0030A1A99, issued

- 5 -

to Montana Power Company in May 1999, with a Limit of Liability of $35,000,000, for the Policy Period beginning May 1, 1999 and, by successive endorsements entitled "Multi-Year Policy Endorsement Single Aggregate," ending May 1, 2002.

4.    "**Agreement**" shall have the meaning ascribed to it in the Preamble to this Agreement.

5.    "**Allocation Agreement**" shall have the meaning ascribed to it in the Recitals to this Agreement.

6.    "**Allocation Agreement Parties**" shall have the meaning ascribed to it in Section F to the Preamble to this Agreement.

7.    "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware.

8.    "**Bankruptcy Court D&O Action**" means *Brent Williams as Plan Trustee for Touch America Holdings, Inc. and its Affiliated Debtor Entities, as Successor in Interest to the Former Committee of Unsecured Creditors v. Robert P. Gannon, et al.*, United States Bankruptcy Court for the District of Delaware, Case No. 03-11915 (KJC), Adversary Proceeding 04-54840.

9.    "**Bankruptcy Court D&O Settlement Agreement**" shall have the meaning ascribed to it in the Recitals to this Agreement.

10.   "**Bankruptcy Court Final Judgment**" shall have the meaning ascribed to it in Section I.1.h of this Agreement.

11.   "**Bankruptcy Court Parties**" shall have the meaning ascribed to it in Section E to the Preamble to this Agreement.

- 6 -

12.    "**Bankruptcy Court Shareholder Action**" means *Brent Williams as Plan Trustee for Touch America Holdings, Inc and its Affiliated Debtor Entities, as Successor in Interest to the Former Committee of Unsecured Creditors v. Margaret A. McGreevey, et al.*, United States Bankruptcy Court for the District of Delaware, Case No. 03-11915 (KJC), Adversary Proceeding 08-51415.

13.    "**Conditional Provisions**" means, collectively, Sections I.B and V of the McGreevey Settlement Agreement, Section IV of the Plan Trust Settlement Agreement, Sections 2.1 and 4 of the Securities Settlement Agreement, Sections 2.5 and 8.1.5 of the ERISA Settlement Agreement, and Sections I.A and II of the Bankruptcy Court D&O Settlement Agreement.

14.    "**D&O Escrow Account**" means an escrow account established pursuant to the terms of the D&O Escrow Agreement.

15.    "**D&O Escrow Agreement**" means the escrow agreement between U.S. Bank National Association, as Escrow Agent, counsel for the McGreevey Named Plaintiffs, Securities Lead Plaintiffs, the Plan Trust, and the D&O Insurance Carriers.

16.    "**D&O Insurance Carriers**" means AEGIS, Twin City Fire Insurance Company, and Federal Insurance Company.

17.    "**Effective Date**" shall have the meaning ascribed to it in Section I.1 of this Agreement.

18.    "**ERISA Action**" means *In re Touch America Holdings, Inc. ERISA Litigation*, United States District Court for the District of Montana, Case No. CV-02-106-BU-SEH.

19.     "**ERISA Final Judgment**" shall have the meaning ascribed to it in Section I.1.d of this Agreement.

20.     "**ERISA Named Plaintiffs**" means Ross Buckingham, Warren Bellcour, Kim Moran, Torlief Pederson, and Charles Porter.

21.     "**ERISA Parties**" shall have the meaning ascribed to it in Section D to the Preamble to this Agreement.

22.     "**ERISA Settlement Agreement**" shall have the meaning ascribed to it in the Recitals to this Agreement.

23.     "**ERISA Settlement Class**" means the "Settlement Class," as such term is defined in the ERISA Settlement Agreement.

24.     "**Escrow Expenses**" means, with respect to a particular escrow account, all fees, costs and expenses, including all escrow agent fees and all indemnity obligations, arising from or in connection with such escrow account.

25.     "**Goldman Sachs**" means, collectively, Goldman, Sachs & Co. and The Goldman Sachs Group, Inc.

26.     "**Goldman/Milbank Escrow Account**" means an escrow account established pursuant to the terms of an escrow agreement to be entered into by counsel for the McGreevey Named Plaintiffs, the Plan Trust, Goldman Sachs, and Milbank.

27.     "**Individual Defendants**" means Robert P. Gannon, Jerrold P. Pederson, Michael J. Meldahl, Kay Foster, Carl Lehrkind, III, Deborah D. McWhinney, Tucker Hart Adams, Alan F. Cain, John G. Connors, R.D. Corette, John R. Jester, Michael E. Zimmerman, John D. Haffey, and Noble E. Vosburg.

28.     "**Insurance Agreement Parties**" shall have the meaning ascribed to it in Section G to the Preamble to this Agreement.

29.     "**Insurance Settlement Agreement**" shall have the meaning ascribed to it in the Recitals to this Agreement.

30.     "**Master Settlement Agreement Parties**" shall have the meaning ascribed to it in Section G to the Preamble to this Agreement.

31.     "**McGreevey Actions**" means, collectively, (a) *Margaret A. McGreevey, et al. v. Montana Power Company, et al.*, United States District Court for the District of Montana, Case No. CV-03-01-BU-SEH; and (b) *Margaret McGreevey, et al. v. Associated Electric & Gas Insurance Services Limited*, United States District Court for the District of Montana, Case No. CV-04-16-BU-SEH.

32.     "**McGreevey Action Administrative Expenses**" means all expenses incurred in connection with the preparation, printing and mailing of notice to the McGreevey Settlement Class, and all expenses of settlement administration attributable to the McGreevey Actions, to the extent such expenses are paid prior to the Effective Date; *provided however*, that McGreevey Administrative Expenses shall not include any amount of fees and expenses awarded to counsel for the McGreevey Named Plaintiffs.

33.     "**McGreevey Action Settlement Account**" means a segregated interest-bearing account established by counsel for the McGreevey Named Plaintiffs.  All monies in the McGreevey Action Settlement Account, including all interest accruing thereon, will remain subject to the jurisdiction of the Court until such time as they are paid out as (i) McGreevey Action Administrative Expenses; (ii) Escrow Expenses for the

McGreevey Action Settlement Account; (iii) Tax Expenses for the McGreevey Action

Settlement Account; (iv) distributions to Authorized Claimants (as defined in the

McGreevey Settlement Agreement) after the Effective Date; or (v) Attorneys' Fees and

Expenses Award (as defined in the McGreevey Settlement Agreement).

34.     "**McGreevey Final Judgment**" shall have the meaning ascribed to

it in Section I.1.b of this Agreement.

35.     "**McGreevey Named Plaintiffs**" means Margaret A. McGreevey,

Thomas G. Taylor, Joanne Barkell, Patrick Burton, Rosalie Burton, James Dudley,

Joseph Martelli, and Lawrence A. Lombardo.

36.     "**McGreevey Parties**" shall have the meaning ascribed to it in

Section A to the Preamble to this Agreement.

37.     "**McGreevey Settlement Agreement**" shall have the meaning

ascribed to it in the Recitals to this Agreement.

38.     "**McGreevey Settlement Class**" means the "Settlement Class," as

such term is defined in the McGreevey Settlement Agreement.

39.     "**Milbank**" means Milbank, Tweed, Hadley & McCloy LLP.

40.     "**Montana Court**" means the United States District Court for the

District of Montana.

41.     "**Montana Court Final Judgments**" shall have the meaning

ascribed to it in Section I.1.d of this Agreement.

42.     "**Notice Orders**" means the order(s) entered by the Montana Court

setting a hearing for final approval of the McGreevey Settlement Agreement, the

Securities Settlement Agreement and the ERISA Settlement Agreement and approving the form and manner of class notice.

43.     "**Person**" means an individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, or any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives and assignees.

44.     "**Plan Trust**" means the Plan Trust of Touch America Holdings, Inc., created pursuant to the Debtor's Amended Liquidating Chapter 11 Plan, as modified, confirmed by the Bankruptcy Court in an order entered October 6, 2004.

45.     "**Plan Trust Action**" means *Plan Trust of Touch America Holdings, Inc. v. Goldman, Sachs & Co., et al.*, United States District Court for the District of Montana, Case No. CV-04-87-BU-SEH.

46.     "**Plan Trust Parties**" shall have the meaning ascribed to it in Section B to the Preamble to this Agreement.

47.     "**Plan Trust Settlement Agreement**" shall have the meaning ascribed to it in the Recitals to this Agreement.

48.     "**Proposer**" shall have the meaning ascribed to it in Section VII.2 of this Agreement.

49.     "**Released Persons**" means "Released Persons" as that term is defined in the McGreevey Settlement Agreement.

- 11 -

50.      "**Securities Action**" means *In re Touch America Holdings, Inc. Securities Litigation*, United States District Court for the District of Montana, Case No. CV-02-0057-BU-SEH.

51.      "**Securities Action Administrative Expenses**" means all expenses incurred in connection with the preparation, printing and mailing of notice to the Securities Settlement Class, and all expenses of settlement administration, to the extent such expenses are paid prior to the Effective Date.

52.      "**Securities Action Settlement Account**" means a segregated interest-bearing account established by counsel for the Securities Lead Plaintiffs.  All monies in the Securities Action Settlement Account, including all interest accruing thereon, will remain subject to the jurisdiction of the Court until such time as they are paid out as (i) Securities Action Administrative Expenses; (ii) Escrow Expenses for the Securities Action Settlement Account, (iii) Tax Expenses for the Securities Action Settlement Account; (iv) distributions to Authorized Claimants (as defined in the Securities Settlement Agreement) after the Effective Date; or (v) Attorneys' Fees and Expenses Award (as defined in the Securities Settlement Agreement).

53.      "**Securities Final Judgment**" shall have the meaning ascribed to it in Section I.1.c of this Agreement.

54.      "**Securities Lead Plaintiffs**" means Gerald R. Vogt and William M. Klaess.

55.      "**Securities Parties**" shall have the meaning ascribed to it in Section C to the Preamble to this Agreement.

- 12 -

56.     "**Securities Settlement Agreement**" shall have the meaning ascribed to it in the Recitals to this Agreement.

57.     "**Securities Settlement Class**" means the "Securities Settlement Class," as such term is defined in the Securities Settlement Agreement.

58.     "**Settlement Agreements**" shall have the meaning ascribed to it in the Recitals to this Agreement.

59.     "**Tax Expenses**" means, with respect to a particular escrow account, (i) all taxes on earnings in such escrow account, and (ii) fees, costs and expenses incurred in connection with such taxation (including, without limitation, fees, costs and expenses of tax attorneys and accountants).

## AGREEMENT

I.     CONDITIONS TO EFFECTIVENESS OF CONDITIONAL PROVISIONS

1.     Notwithstanding anything in the various Settlement Agreements to the contrary, no Conditional Provision shall be effective until each of the following conditions has been fulfilled (the first date on which all of the following conditions have been fulfilled is referred to as the "**Effective Date**"):

a.     Each of the Settlement Agreements has been duly executed by all of the respective parties thereto.

b.     The Montana Court has entered a final judgment pursuant to Federal Rule of Civil Procedure 58(a) finally approving the McGreevey Settlement Agreement in the form attached hereto as Exhibit H (as it may be modified from time to time by the Montana Court (x) in a manner that is not materially adverse to any

McGreevey Party (it being understood that any such modification pertaining to the award of attorneys' fees or costs shall be deemed not materially adverse to any McGreevey Party) or (y) in a manner that is materially adverse to any McGreevey Party but no such McGreevey Party has thereby terminated this Agreement within the 30-day time period set forth in Section II.3 of this Agreement) (the "**McGreevey Final Judgment**").

c.      The Montana Court has entered a final judgment pursuant to Federal Rule of Civil Procedure 58(a) finally approving the Securities Settlement Agreement in the form attached hereto as Exhibit I (as it may be modified from time to time by the Montana Court (x) in a manner that is not materially adverse to any Securities Party (it being understood that any such modification pertaining to the award of attorneys' fees or costs shall be deemed not materially adverse to any Securities Party) or (y) in a manner that is materially adverse to any Securities Party but no such Securities Party has thereby terminated this Agreement within the 30-day time period set forth in Section II.4 of this Agreement) (the "**Securities Final Judgment**").

d.      The Montana Court has entered a final judgment pursuant to Federal Rule of Civil Procedure 58(a) finally approving the ERISA Settlement Agreement in the form attached hereto as Exhibit J (as it may be modified from time to time by the Montana Court (x) in a manner that is not materially adverse to any ERISA Party (it being understood that any such modification pertaining to the award of attorneys' fees or costs shall be deemed not materially adverse to any ERISA Party) or (y) in a manner that is materially adverse to any ERISA Party but no such ERISA Party has thereby terminated this Agreement within the 30-day time period set forth in Section II.5 of this Agreement) (the "**ERISA Final Judgment**" and, together with the

McGreevey Final Judgment and the Securities Final Judgment, the "**Montana Court Final Judgments**").

e.      Either (1) the McGreevey Final Judgment is no longer subject to appeal (excluding any appeal pertaining solely to the award of attorneys' fees or costs), or (2) if appealed (excluding any appeal pertaining solely to the award of attorneys' fees or costs), the McGreevey Final Judgment (as it may be modified from time to time by an appellate court or by the Montana Court upon remand (x) in a manner that is not materially adverse to any McGreevey Party (it being understood that any such modification pertaining to the award of attorneys' fees or costs shall be deemed not materially adverse to any McGreevey Party) or (y) in a manner that is materially adverse to any McGreevey Party but no such McGreevey Party has thereby terminated this Agreement within the 30-day time period set forth in Section II.3 of this Agreement) is affirmed by the highest court exercising jurisdiction over any such appeal and is no longer subject to further appellate review (excluding any appellate review pertaining solely to the award of attorneys' fees and costs).

f.      Either (1) the Securities Final Judgment is no longer subject to appeal (excluding any appeal pertaining solely to the award of attorneys' fees or costs), or (2) if appealed (excluding any appeal pertaining solely to the award of attorneys' fees or costs), the Securities Final Judgment (as it may be modified from time to time by an appellate court or by the Montana Court upon remand (x) in a manner that is not materially adverse to any Securities Party (it being understood that any such modification pertaining to the award of attorneys' fees or costs shall be deemed not materially adverse to any Securities Party) or (y) in a manner that is materially adverse to

any Securities Party but no such Securities Party has thereby terminated this Agreement within the 30-day time period set forth in Section II.4 of this Agreement) is affirmed by the highest court exercising jurisdiction over any such appeal and is no longer subject to further appellate review (excluding any appellate review pertaining solely to the award of attorneys' fees and costs).

       g.     Either (1) the ERISA Final Judgment is no longer subject to appeal (excluding any appeal pertaining solely to the award of attorneys' fees or costs), or (2) if appealed (excluding any appeal pertaining solely to the award of attorneys' fees or costs), the ERISA Final Judgment (as it may be modified from time to time by an appellate court or by the Montana Court upon remand (x) in a manner that is not materially adverse to any ERISA Party (it being understood that any such modification pertaining to the award of attorneys' fees or costs shall be deemed not materially adverse to any ERISA Party) or (y) in a manner that is materially adverse to any ERISA Party but no such ERISA Party has thereby terminated this Agreement within the 30-day time period set forth in Section II.5 of this Agreement) is affirmed by the highest court exercising jurisdiction over any such appeal and is no longer subject to further appellate review (excluding any appellate review pertaining solely to the award of attorneys' fees and costs).

       h.     The Bankruptcy Court has entered a final order(s) and judgment(s) pursuant to Federal Rules of Bankruptcy Procedure 9019 and 9021 (where applicable) finally approving the Master Settlement Agreement, the Bankruptcy Court Settlement Agreement, the Plan Trust Settlement Agreement, the Securities Settlement Agreement, the Allocation Agreement and the Insurance Settlement Agreement in the

form attached hereto as <u>Exhibit K</u> (as it may be modified from time to time by the
Bankruptcy Court (x) in a manner that is not materially adverse to any Master Settlement
Agreement Party or (y) in a manner that is materially adverse to any Master Settlement
Agreement Party but no such Party has thereby terminated this Agreement within the 30-
day time period set forth in Section II.6, II.7, II.8 or II.9 of this Agreement) (the
"**Bankruptcy Court Final Judgment**").

        i.      Either (1) the Bankruptcy Court Final Judgment is no
longer subject to appeal, or (2) if appealed, the Bankruptcy Court Final Judgment (as it
may be modified from time to time by an appellate court or by the Bankruptcy Court
upon remand (x) in a manner that is not materially adverse to any Master Settlement
Agreement Party or (y) in a manner that is materially adverse to any Master Settlement
Agreement Party but no such Master Settlement Agreement Party has thereby terminated
this Agreement within the 30-day time period set forth in Section II.6, II.7, II.8 or II.9 of
this Agreement) is affirmed by the highest court exercising jurisdiction over any such
appeal and is no longer subject to further appellate review.

        j.      The funding of escrow accounts pursuant to Section III of
this Agreement, Paragraph 2.1 of the Securities Settlement Agreement, and Section 6 of
the ERISA Settlement Agreement shall have occurred.

        k.      The requests for dismissal set forth in Section II of the Plan
Trust Settlement Agreement shall have been filed with the Montana Court.

        2.      On the Effective Date, each of the Conditional Provisions shall
become automatically effective without the requirement of any further action by any of
the Master Settlement Agreement Parties.

II.    TERMINATION

1.    This Agreement may not be terminated by any of the Master Settlement Agreement Parties except as provided in this Section II.

2.    Each of the Master Settlement Agreement Parties shall, in its separate discretion, have the right to terminate this Agreement, prior to the Effective Date, by providing written notice of its election to do so to the other Master Settlement Agreement Parties hereto if any of the conditions set forth in Section I.1 cannot reasonably be expected to be met, assuming all Master Settlement Agreement Parties used their best efforts to meet such condition.

3.    Each of the McGreevey Parties shall, in its separate discretion, have the right to terminate this Agreement, prior to the Effective Date, by providing written notice of its election to do so to the other Master Settlement Agreement Parties hereto within thirty (30) days of (a) the Montana Court's entering a final judgment finally approving the McGreevey Settlement Agreement that deviates from the form attached hereto as Exhibit H in any respect that is materially adverse to such McGreevey Party (it being understood that any such modification pertaining to the award of attorneys' fees or costs shall be deemed not materially adverse to such McGreevey Party), or (b) the Montana Court's or any appellate court's modification or reversal of the McGreevey Final Judgment or the McGreevey Settlement Agreement in any respect that is materially adverse to such McGreevey Party (it being understood that any such modification or reversal pertaining to the award of attorneys' fees or costs shall be deemed not materially adverse to such McGreevey Party).

- 18 -

4.     Each of the Securities Parties shall, in its separate discretion, have the right to terminate this Agreement, prior to the Effective Date, by providing written notice of its election to do so to the other Master Settlement Agreement Parties hereto within thirty (30) days of (a) the Montana Court's entering a final judgment finally approving the Securities Settlement Agreement that deviates from the form attached hereto as Exhibit I in any respect that is materially adverse to such Securities Party (it being understood that any such modification pertaining to the award of attorneys' fees or costs shall be deemed not materially adverse to such Securities Party), or (b) the Montana Court's or any appellate court's modification or reversal of the Securities Final Judgment or the Securities Settlement Agreement in any respect that is materially adverse to such Securities Party (it being understood that any such modification or reversal pertaining to the award of attorneys' fees or costs shall be deemed not materially adverse to such Securities Party).

5.     Each of the ERISA Parties shall, in its separate discretion, have the right to terminate this Agreement, prior to the Effective Date, by providing written notice of its election to do so to the other Master Settlement Agreement Parties hereto within thirty (30) days of (a) the Montana Court's entering a final judgment finally approving the ERISA Settlement Agreement that deviates from the form attached hereto as Exhibit J in any respect that is materially adverse to such ERISA Party (it being understood that any such modification pertaining to the award of attorneys' fees or costs shall be deemed not materially adverse to such ERISA Party), or (b) the Montana Court's or any appellate court's modification or reversal of the ERISA Final Judgment or the ERISA Settlement Agreement in any respect that is materially adverse to such ERISA Party (it being

- 19 -

understood that any such modification or reversal pertaining to the award of attorneys'
fees or costs shall be deemed not materially adverse to such ERISA Party).

      6.     Each of the Plan Trust Parties shall, in its separate discretion, have
the right to terminate this Agreement, prior to the Effective Date, by providing written
notice of its election to do so to the other Master Settlement Agreement Parties hereto
within thirty (30) days of (a) the Bankruptcy Court's entering a final judgment finally
approving the Plan Trust Settlement Agreement that deviates from the form attached
hereto as Exhibit K in any respect that is materially adverse to such Plan Trust Party, or
(b) the Bankruptcy Court's or any appellate court's modification or reversal of the
Bankruptcy Court Final Judgment or the Plan Trust Settlement Agreement in any respect
that is materially adverse to such Plan Trust Party.

      7.     Each of the Bankruptcy Court Parties shall, in its separate
discretion, have the right to terminate this Agreement, prior to the Effective Date, by
providing written notice of its election to do so to the other Master Settlement Agreement
Parties hereto within thirty (30) days of (a) the Bankruptcy Court's entering a final
judgment finally approving the Bankruptcy Court D&O Settlement Agreement that
deviates from the form attached hereto as Exhibit K in any respect that is materially
adverse to such Bankruptcy Court Party, or (b) the Bankruptcy Court's or any appellate
court's modification or reversal of the Bankruptcy Court Final Judgment or the
Bankruptcy Court D&O Settlement Agreement in any respect that is materially adverse to
such Bankruptcy Court Party.

      8.     Each of the Allocation Agreement Parties shall, in its separate
discretion, have the right to terminate this Agreement, prior to the Effective Date, by

- 20 -

providing written notice of its election to do so to the other Master Settlement Agreement Parties hereto within thirty (30) days of (a) the Bankruptcy Court's entering a final judgment finally approving the Allocation Agreement that deviates from the form attached hereto as <u>Exhibit K</u> in any respect that is materially adverse to such Allocation Agreement Party, or (b) the Bankruptcy Court's or any appellate court's modification or reversal of the Bankruptcy Court Final Judgment or the Allocation Agreement in any respect that is materially adverse to such Allocation Agreement Party.

9.      Each of the Insurance Parties shall, in its separate discretion, have the right to terminate this Agreement, prior to the Effective Date, by providing written notice of its election to do so to the other Master Settlement Agreement Parties hereto within thirty (30) days of (a) the Bankruptcy Court's entering a final judgment finally approving the Insurance Settlement Agreement that deviates from the form attached hereto as <u>Exhibit K</u> in any respect that is materially adverse to such Insurance Party, or (b) the Bankruptcy Court's or any appellate court's modification or reversal of the Bankruptcy Court Final Judgment or the Insurance Settlement Agreement in any respect that is materially adverse to such Insurance Party.

10.      If either (a) any of the Master Settlement Agreement Parties properly exercises its rights of termination prior to the Effective Date for any of the reasons set forth in Section II.2, II.3, II.4, II.5, II.6, II.7, II.8 or II.9 of this Agreement or (b) any of the Settlement Agreements terminates prior to the Effective Date in accordance with its terms, then (i) this Agreement and each Settlement Agreement shall be automatically deemed to be terminated without prejudice, and none of the terms of this Agreement or any Settlement Agreement shall be enforceable or of any further force or

effect, except for such terms relating to the return of funds or that expressly survive termination; (ii) the Master Settlement Agreement Parties shall take all necessary actions to vacate any Montana Court Final Judgment that has been entered by the Montana Court, to vacate any Bankruptcy Court Final Judgment that has been entered by the Bankruptcy Court, and to dismiss all appeals of any Montana Court Final Judgment or any Bankruptcy Court Final Judgment; (iii) any Memorandum of Understanding entered into by two or more of the Master Settlement Agreement Parties shall remain in full force and effect unless the Memorandum of Understanding provides otherwise and to the extent those terms are not inconsistent with any order of the Montana Court; and (iv) the fact and terms of this Agreement or any Settlement Agreement shall not be admissible in any trial of any of the Actions or useable in any other proceeding, including, but not limited to, for purposes of obtaining certification of a class other than for settlement purposes.  Each of the Master Settlement Agreement Parties is not, and shall not be deemed to be, a party to any Memorandum of Understanding, and shall not be bound or affected in any way by the provisions of any Memorandum of Understanding, unless expressly named as a party to such Memorandum of Understanding.

III.   PAYMENT

       1.     By no later than twenty (20) calendar days after the D&O Insurance Carriers are given notice (including copies) of (i) the Montana Court's entry of the Notice Orders and (ii) the Bankruptcy Court's entry of an order or orders pursuant to Federal Rules of Bankruptcy Procedure 9019 and/or 9021 approving the Allocation Agreement, Bankruptcy Court D&O Settlement Agreement, and Insurance Settlement

Agreement, the following payments shall be made by wire transfer, severally and not jointly, into the D&O Escrow Account.

a.    AEGIS shall pay an amount equal to $35,000,000 less all Ultimate Net Loss (as that term is defined in the AEGIS Policy) paid under the AEGIS Policy as of the date of the Notice Orders.

b.    Twin City Insurance Company shall pay $15,000,000.

c.    Federal Insurance Company shall pay the lesser of (i) $25,000,000 and (ii) the difference between $68,000,000 and the sum of the payments by AEGIS and Twin City Insurance Company set forth above.

2.    By no later than ten (10) business days after the Montana Court's entry of the Notice Orders, the following payments shall be made by wire transfer, severally and not jointly, into the Goldman/Milbank Escrow Account.

a.    Goldman Sachs shall pay $33,000,000.

b.    Milbank shall pay $14,000,000.

3.    No party shall have any responsibility for any payment, or lack of payment, by any other party.

4.    The sums paid into the D&O Escrow Account and the Goldman/Milbank Escrow Account shall be invested in securities backed by the full faith and credit of the United States Government, and the proceeds of these instruments shall be reinvested as they mature in similar instruments at the then-current market rates, provided however, that any residual cash balances pending investment in such securities, may be invested and reinvested in a money market mutual fund comprised exclusively of investments secured by the full faith and credit of the United States and in accordance

with the terms of the escrow agreements governing the D&O Escrow Account and/or the Goldman/Milbank Escrow Account, as applicable.  None of the Released Persons shall have any responsibility or liability for investment decisions, including any losses resulting thereby, or for any indemnity obligations, or obligations for fees, costs or expenses, arising from or in connection with the D&O Escrow Account, the Goldman/Milbank Escrow Account or any escrow agreement governing any such account.

5.      Prior to the Effective Date, Securities Action Administrative Expenses shall be paid out of the D&O Escrow Account as provided for in the D&O Escrow Agreement.

6.      If, after any payment set forth in Section III.1 is made, this Agreement is terminated prior to the Effective Date, any amounts remaining in the D&O Escrow Account, including any amounts received into such account from the investment or reinvestment of funds, shall be remitted in accordance with the terms of the D&O Escrow Agreement governing the D&O Escrow Account.

7.      If, after any payment set forth in Section III.2 is made, this Agreement is terminated prior to the Effective Date, any amounts remaining in the Goldman/Milbank Escrow Account, including any amounts received into such account from the investment or reinvestment of funds, shall be remitted within 10 days of such termination to the entities that made the original payments into the Goldman/Milbank Escrow Account pursuant to Section III.2, respectively, in proportion to their respective original payments.

- 24 -

8.      Upon the Effective Date, the amount then present in the D&O Escrow Account shall be distributed as follows:

a.      $19,000,000, *less* any Securities Action Administrative Expenses, *less* 27.94% of any Escrow Expenses for the D&O Escrow Account incurred up to the Effective Date, *less* 27.94% of any Tax Expenses for the D&O Escrow Account incurred up to the Effective Date, *plus* 27.94% of any earnings in the D&O Escrow Account up to the Effective Date, will be paid into the Securities Action Settlement Account pursuant to instructions from the TA Securities Escrow Agent;

b.      $21,000,000, *less* 30.88% of any Escrow Expenses for the D&O Escrow Account incurred up to the Effective Date, *less* 30.88% of any Tax Expenses for the D&O Escrow Account incurred up to the Effective Date, *plus* 30.88% of any earnings in the D&O Escrow Account up to the Effective Date, will be paid into the McGreevey Action Settlement Account;

c.      $28,000,000, *less* 41.18% of any Escrow Expenses for the D&O Escrow Account incurred up to the Effective Date, *less* 41.18% of any Tax Expenses for the D&O Escrow Account incurred up to the Effective Date, *plus* 41.18% of any earnings in the D&O Escrow Account up to the Effective Date, will be paid to the Plan Trust, in accordance with wire instructions provided by counsel for the Plan Trust;

d.      If, for any reason, the D&O Escrow Account lacks sufficient funds to make the distributions set forth in this paragraph in full, the deficiency shall be apportioned as follows:  27.94% from the amount to be paid into the Securities Action Settlement Account; 30.88% from the amount to be paid into the McGreevey Action Settlement Account; and 41.18% from the amount to be paid to the Plan Trust.

- 25 -

9.      Upon the Effective Date, the amount then present in the Goldman/Milbank Escrow Account shall be distributed as follows:

a.      $18,280,000, *less* the amount of any McGreevey Action Administrative Expenses that have been advanced by the Plan Trust, *less* 38.89% of any Escrow Expenses for the Goldman/Milbank Escrow Account incurred up to the Effective Date, *less* 38.89% of any Tax Expenses for the Goldman/Milbank Escrow Account incurred up to the Effective Date, *plus* 38.89% of any earnings in the Goldman/Milbank Escrow Account up to the Effective Date, will be paid into the McGreevey Action Settlement Account;

b.      $28,720,000, *less* 61.11% of any Escrow Expenses for the Goldman/Milbank Escrow Account incurred up to the Effective Date, *less* 61.11% of any Tax Expenses for the Milbank/Goldman Escrow Account incurred up to the Effective Date, *plus* 61.11% of any earnings in the Milbank/Goldman Escrow Account up to the Effective Date, *plus* the amount of any McGreevey Action Administrative Expenses that have been advanced by the Plan Trust, will be paid to the Plan Trust, in accordance with wire instructions provided by counsel for the Plan Trust;

c.      If, for any reason, the Goldman/Milbank Escrow Account lacks sufficient funds to make the distributions set forth in this paragraph in full, the deficiency shall be apportioned as follows:  38.89% from the amount to be paid into the McGreevey Action Settlement Account; and 61.11% from the amount to be paid to the Plan Trust.

- 26 -

IV.   QUALIFIED SETTLEMENT FUND

1.       The parties hereto agree that the D&O Escrow Account, the

Goldman/Milbank Escrow Account, and the McGreevey Action Settlement Account are

all intended to be Qualified Settlement Funds within the meaning of Treasury Regulation

§ 1.468B-1, that each of the D&O Insurance Carriers, Goldman Sachs, and Milbank shall,

with respect to the relevant account, be a "transferor" within the meaning of Treasury

Regulation § 1.468B-1(d)(1), and that the Escrow Agent (as that term is defined in the

D&O Escrow Agreement) shall be the "administrator" of the D&O Escrow Account, and

the Administrator (as that term is defined in the McGreevey Settlement Agreement) shall

be the "administrator" of the Goldman/Milbank Escrow Account, and the McGreevey

Action Settlement Account within the meaning of Treasury Regulation § 1.468B-2(k)(3).

The Escrow Agent shall be responsible for filing tax returns for the D&O Escrow

Account and for paying from each of those accounts any Tax Expenses with respect to

that particular account.  The Administrator shall be responsible for filing tax returns for

the Goldman/Milbank Escrow Account and the McGreevey Action Settlement Account

and for paying from each of those accounts any Tax Expenses with respect to that

particular account.  The Escrow Agent and Administrator shall each apply for employer

identification numbers in accordance with Treasury Regulation § 1.468B-2(k)(4).  The

parties hereto agree that all of the D&O Escrow Account, the Goldman/Milbank Escrow

Account, and the McGreevey Action Settlement Account shall be treated as Qualified

Settlement Funds from the earliest date possible, and agree to any relation-back election

required to treat any and all of the D&O Escrow Account, the Goldman/Milbank Escrow

Account, and the McGreevey Action Settlement Account as Qualified Settlement Funds

- 27 -

from the earliest date possible.  The parties hereto intend that the transfers to the D&O

Escrow Account, the Goldman/Milbank Escrow Account, and the McGreevey Action

Settlement Account will, with respect to the relevant transferors, satisfy the "all events

test" and the "economic performance" requirement of Internal Revenue Code § 461(h)(1)

and Treasury Regulation § 1.461-1(a)(2).  Counsel for the D&O Insurance Carriers,

Goldman Sachs, and Milbank agree to timely provide to the Administrator the statement

described in Treasury Regulation § 1.468B-3(e).

   2. All Tax Expenses shall be paid out of the D&O Escrow Account

(as provided in the D&O Escrow Agreement), the Goldman/Milbank Escrow Account,

and the McGreevey Action Settlement Account; in all events the Released Persons shall

not have any liability or responsibility for the Tax Expenses or the filing of any tax

returns or other documents with the Internal Revenue Service or any other state or local

taxing authority.  Tax Expenses shall be treated as, and considered to be, a cost of

administration of the Agreement and shall be paid out of the D&O Escrow Account (in

accordance with the D&O Escrow Agreement), the Goldman/Milbank Escrow Account,

and the McGreevey Action Settlement Account in a timely manner without prior order

from the Court, and the Administrator shall be obligated to withhold from distribution

any funds necessary to pay such amounts; the Released Persons are not responsible and

shall have no liability therefor or for any reporting requirements that may relate thereto.


V.  REPRESENTATIONS AND WARRANTIES

   1. Counsel to the McGreevey Named Plaintiffs hereby represent and

warrant to each of the Master Settlement Agreement Parties that (a) they are authorized to

execute, deliver, and perform this Agreement by and on behalf of the McGreevey Named Plaintiffs, that this Agreement constitutes a legal, valid, and binding obligation of the McGreevey Named Plaintiffs, and that it is enforceable against the McGreevey Named Plaintiffs in accordance with its terms, and (b) they shall take all necessary actions by and on behalf of the McGreevey Named Plaintiffs to effectuate the terms of this Agreement.

2.      Counsel to the Securities Lead Plaintiffs hereby represent and warrant to each of the Master Settlement Agreement Parties that (a) they are authorized to execute, deliver, and perform this Agreement by and on behalf of the Securities Lead Plaintiffs, that this Agreement constitutes a legal, valid, and binding obligation of the Securities Lead Plaintiffs, and that it is enforceable against the Securities Lead Plaintiffs in accordance with its terms, and (b) they shall take all necessary actions by and on behalf of the Securities Lead Plaintiffs to effectuate the terms of this Agreement.

3.      Counsel to the ERISA Named Plaintiffs hereby represent and warrant to each of the Master Settlement Agreement Parties that (a) they are authorized to execute, deliver, and perform this Agreement by and on behalf of the ERISA Named Plaintiffs, that this Agreement constitutes a legal, valid, and binding obligation of the ERISA Named Plaintiffs, and that it is enforceable against the ERISA Named Plaintiffs in accordance with its terms, and (b) they shall take all necessary actions by and on behalf of the ERISA Named Plaintiffs to effectuate the terms of this Agreement.

4.      Subject to Bankruptcy Court approval where necessary, each of the Master Settlement Agreement Parties, other than the McGreevey Named Plaintiffs, the Securities Lead Plaintiffs and the ERISA Named Plaintiffs, hereby represents and warrants to each of the other Master Settlement Agreement Parties that (a) such Master

Settlement Agreement Party is authorized to execute, deliver, and perform this Agreement, that this Agreement constitutes a legal, valid, and binding obligation of such Master Settlement Agreement Party, and that it is enforceable against such Master Settlement Agreement Party in accordance with its terms, and (b) such Master Settlement Agreement Party shall take all necessary actions to effectuate the terms of this Agreement.

VI.    COMPROMISE; NO ADMISSION OF LIABILITY

This Agreement constitutes a compromise of certain matters that are in dispute by and among various Master Settlement Agreement Parties. Defendants in each of the Actions are entering into this Agreement solely to eliminate the uncertainty, burden and expense of further protracted litigation. Defendants in each of the Actions have denied and continue to deny each and every allegation of wrongdoing, liability and/or damage to any plaintiff, settlement class or class member, and believe that any and all claims against them are without merit. This Agreement, whether or not consummated, any proceedings related to this Agreement and any of the terms of this Agreement are not intended to constitute, nor should they be construed as, any admission of liability or wrongdoing in any respect. Neither this Agreement, nor the fact of its execution, nor any of its provisions, shall be offered or received in evidence in any action or proceeding of any nature or otherwise referred to or used in any manner (including in discovery) in any court or other tribunal, except in a proceeding to enforce the terms of this Agreement.

VII.   MISCELLANEOUS PROVISIONS

      1.   No Incorporation by Reference

Each of the Master Settlement Agreement Parties hereby expressly agrees and acknowledges that none of the McGreevey Settlement Agreement, the Plan Trust Settlement Agreement, the Securities Settlement Agreement, the ERISA Settlement Agreement, the Bankruptcy Court D&O Settlement Agreement, the Allocation Agreement, the Insurance Settlement Agreement, any exhibit attached to this Agreement, nor any provision of any of the foregoing, is incorporated into this Agreement by reference, unless otherwise expressly provided in this Agreement.  Each of the Master Settlement Agreement Parties is not, and shall not be deemed to be, a party to any Settlement Agreement, and shall not be bound or affected in any way by the provisions of any Settlement Agreement in each case unless expressly named as a party to such Settlement Agreement.

      2.   Amendment

This Agreement may not be amended except by a writing signed by all Master Settlement Agreement Parties or their successors in interest.

Notwithstanding anything in the various Settlement Agreements to the contrary, no Settlement Agreement may be amended, except with the written consent of each Master Settlement Agreement Party or its successor in interest; provided, that, (a) no Master Settlement Agreement Party or its successor in interest shall unreasonably withhold its consent with respect to any proposed amendment of any Settlement Agreement to which it is not a party, and (b) if any party (the "**Proposer**") to a Settlement Agreement provides written notice of any such proposed amendment of such

agreement to each Master Settlement Agreement Party (which written notice shall attach the full and complete text of such proposed amendment), then each Master Settlement Agreement Party shall be deemed to have provided its written consent to such proposed amendment, unless such Master Settlement Agreement Party has provided written notice to the Proposer of a reasonable objection to such proposed amendment within seven (7) days of receipt of the notice from the Proposer.  The Proposer shall promptly provide a full and complete written copy of any such objection to each Master Settlement Agreement Party.  For the avoidance of doubt, the requirements of this Section VII.2 are in addition to, and do not in any way limit, any other requirements set forth in any Settlement Agreement regarding the amendment thereof.

      3.     Choice of Law

This Agreement shall be governed by and construed in accordance with the laws of the State of Montana for contracts entered into and performed within the State of Montana without regard to conflicts of law principles.

      4.     Retention of Jurisdiction

Except as provided in Section VII.12 of this Agreement, the administration and consummation of this Agreement shall be under the authority of the Montana Court, and the Montana Court shall retain exclusive jurisdiction for the purpose of enforcing the terms of this Agreement, and the Bankruptcy Court shall retain jurisdiction over those matters within its exclusive jurisdiction.

      5.     Waiver of Breach

No breach of any provision of this Agreement shall be deemed waived unless expressly waived in writing by the Master Settlement Agreement Party

- 32 -

who may assert such breach.  The failure by any Master Settlement Agreement Party to enforce any term or provision of this Agreement shall not constitute a waiver of the right to enforce such term or provision, or any other term or provision, thereafter.  No waiver by any Master Settlement Agreement Party of any term or provision of this Agreement shall be deemed to or shall constitute a waiver of any other provision of this Agreement, whether or not similar, nor shall any such waiver constitute a continuing waiver, unless otherwise expressly provided in writing, nor shall any such waiver constitute a waiver by any other Master Settlement Agreement Party.

6.      Headings; Words

The headings herein are included for the purpose of convenience only and are not meant to have legal effect.  Words used herein, regardless of the number and gender specifically used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine or neuter, as the context indicates is appropriate.

7.      Notices to Master Settlement Agreement Parties

All notices to any Master Settlement Agreement Party required or permitted under this Agreement shall be in writing and delivered by any method providing proof of delivery, including facsimile.  Any notice shall be deemed to have been given on the date of delivery.  Notices shall be delivered to a Master Settlement Agreement Party at the addresses listed for such Master Settlement Agreement Party (or, in the case of the McGreevey Named Plaintiffs, the Securities Lead Plaintiffs and the ERISA Named Plaintiffs, such Master Settlement Agreement Party's counsel) on the signature pages to this Agreement, unless and until a different address has been

designated by such Master Settlement Agreement Party (or, in the case of the McGreevey

Named Plaintiffs, the Securities Lead Plaintiffs and the ERISA Named Plaintiffs, such

Master Settlement Agreement Party's counsel) by notice to all other Master Settlement

Agreement Parties in accordance with this Section VII.7.

        8.    <u>Successors</u>

This Agreement shall be binding upon and inure to the benefit of

the Master Settlement Agreement Parties and their respective heirs, successors and

assigns, and upon any corporation, limited liability partnership, or other entity into or

with which any Master Settlement Agreement Party who is not an individual may merge,

combine or consolidate.

        9.    <u>Rule of Construction</u>

The Master Settlement Agreement Parties have drafted this

Agreement jointly, and, accordingly, any presumption or other rule of construction that

any ambiguities be resolved against the drafting party shall not be employed in the

interpretation of this Agreement.

        10.    <u>Third Party Beneficiaries</u>

Nothing contained in this Agreement is intended to confer upon

any Person other than the Master Settlement Agreement Parties any benefit, release, right

or remedy under or by reason of this Agreement.

        11.    <u>Counterparts</u>

This Agreement may be executed in counterparts, including by

signature transmitted by facsimile or email.  Signatures sent by facsimile or PDF format

shall be deemed originals.  Each counterpart when so executed shall be deemed to be an original, and all such counterparts together shall constitute the same instrument.

12.    Resolution of Disputes

The Settling Parties agree that if any disputes among them arise out of this Agreement, such disputes will be resolved by the Hon. Daniel Weinstein (Ret.), first by means of mediation and, if unsuccessful, then by means of final, binding, non-appealable arbitration conducted pursuant to the JAMS Streamlined Arbitration Rules.  If Judge Weinstein is unable to serve, any such mediation or arbitration shall be conducted under the auspices of JAMS, pursuant to the JAMS Streamlined Arbitration Rules, with a single mediator or arbitrator who shall be a retired federal judge selected in accordance with the JAMS Rules.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, this Agreement has been executed by the

Master Settlement Agreement Parties by their duly authorized representatives signing

below.

COUNSEL FOR MCGREEVEY NAMED PLAINTIFFS

KNIGHT, DAHOOD, EVERETT & SIEVERS

_____
Wade J. Dahood

113 E. Third Street
Anaconda, MT 59711
Fax: (406) 563-7519

DATSOPOULOUS, MacDONALD & LIND, P.C.

_____
Milton Datsopoulos

Central Square Building
201 W. Main Street, Suite 201
Missoula, MT 59801
Fax: (406) 543-0134

MORRISON & FRAMPTON

_____
Sean S. Frampton

The Historic Frank Lloyd Wright Building
341 Central Avenue
Whitefish, MT 59937
Fax: (406) 862-9611

SIGNATURE PAGES TO MASTER
SETTLEMENT AGREEMENT

IN WITNESS WHEREOF, this Agreement has been executed by the

Master Settlement Agreement Parties by their duly authorized representatives signing

below.

COUNSEL FOR MCGREEVEY NAMED PLAINTIFFS

KNIGHT, DAHOOD, EVERETT & SIEVERS

_____

Wade J. Dahood

113 E. Third Street
Anaconda, MT 59711
Fax: (406) 563-7519

DATSOPOULOUS, MacDONALD & LIND, P.C.

_____
Milton Datsopoulos

Central Square Building
201 W. Main Street, Suite 201
Missoula, MT 59801
Fax: (406) 543-0134

MORRISON & FRAMPTON

_____
Sean S. Frampton

The Historic Frank Lloyd Wright Building
341 Central Avenue
Whitefish, MT 59937
Fax: (406) 862-9611

S-1

McGARVEY, HEBERLING, SULLIVAN & McGARVEY, P.C.

_____
Allan M. McGarvey

745 South Main
Kalispell, MT 59901
Fax: (406) 752-7124

THE TOUCH AMERICA HOLDINGS, INC. PLAN TRUST

By: _____
       Name: Brent C. Williams
       Title:   Plan Trustee

Plan Trust
Brent C. Williams, Plan Trustee
Chanin Capital Partners
55 East 52nd Street
31st Floor
New York, NY 10055
Fax: (212) 758-2628

With copies to:

Robert A. Julian
Todd J. Dressel
David J. Richardson
Winston & Strawn LLP
101 California Street, 38th Floor
San Francisco, CA 94111
Fax: (415) 591-1400

Joseph W. Cotchett
Nancy L. Fineman
Cotchett, Pitre & McCarthy
840 Malcolm Road
Burlingame, CA 94010
Fax: (650) 697-0577

McGARVEY, HEBERLING, SULLIVAN & McGARVEY,
P.C.

_____

**Allan M. McGarvey**

**745 South Main**
**Kalispell, MT** 59901
Fax: (406) 752-7124

THE TOUCH AMERICA HOLDINGS, INC. PLAN TRUST

By: _____

    Name: Brent C. Williams
    Title: Plan Trustee

Plan Trust
**Brent C. Williams, Plan Trustee**
Chanin Capital **Partners**
55 East 52nd Street
31st **Floor**
**New York, NY** 10055
**Fax: (212)** 758-2628

With copies to:

**Robert A. Julian**
Todd J. Dressel
**David J. Richardson**
Winston & Strawn LLP
101 **California** Street, 38th **Floor**
San Francisco, CA 94111
Fax: (415) 591-1400

Joseph W. Cotchett
Nancy L. Fineman
**Cotchett, Pitre & McCarthy**
840 Malcolm Road
Burlingame, CA 94010
**Fax: (650)** 697-0577

S-2

ROBERT P. GANNON

_____

Dana Christensen
Christensen, Moore, Cockrell Cummings & Axelberg, PC
P.O. Box 7370
Kalispell, MT 59904-0370
Fax: (406) 756-6533

JERROLD P. PEDERSON

_____

Dana Christensen
Christensen, Moore, Cockrell Cummings & Axelberg, PC
P.O. Box 7370
Kalispell, MT 59904-0370
Fax: (406) 756-6533

MICHAEL E. ZIMMERMAN

_____

Dana Christensen
Christensen, Moore, Cockrell Cummings & Axelberg, PC
P.O. Box 7370
Kalispell, MT 59904-0370
Fax: (406) 756-6533

MICHAEL J. MELDAHL

_____

Dana Christensen
Christensen, Moore, Cockrell Cummings & Axelberg, PC
P.O. Box 7370
Kalispell, MT 59904-0370
Fax: (406) 756-6533

S-3                    SIGNATURE PAGES TO MASTER
                       SETTLEMENT AGREEMENT

ROBERT P. GANNON

_____

Dana Christensen
Christensen, Moore, Cockrell Cummings & Axelberg, PC
P.O. Box 7370
Kalispell, MT  59904-0370
Fax: (406) 756-6533

JERROLD P. PEDERSON

*Jerrold P Pederson*

Dana Christensen
Christensen, Moore, Cockrell Cummings & Axelberg, PC
P.O. Box 7370
Kalispell, MT  59904-0370
Fax: (406) 756-6533

MICHAEL E. ZIMMERMAN

_____

Dana Christensen
Christensen, Moore, Cockrell Cummings & Axelberg, PC
P.O. Box 7370
Kalispell, MT  59904-0370
Fax: (406) 756-6533

MICHAEL J. MELDAHL

_____

Dana Christensen
Christensen, Moore, Cockrell Cummings & Axelberg, PC
P.O. Box 7370
Kalispell, MT  59904-0370
Fax: (406) 756-6533

ROBERT P. GANNON

_____

Dana Christensen
Christensen, Moore, Cockrell Cummings & Axelberg, PC
P.O. Box 7370
Kalispell, MT 59904-0370
Fax: (406) 756-6533

JERROLD P. PEDERSON

_____

Dana Christensen
Christensen, Moore, Cockrell Cummings & Axelberg, PC
P.O. Box 7370
Kalispell, MT 59904-0370
Fax: (406) 756-6533

MICHAEL E. ZIMMERMAN

_____

Dana Christensen
Christensen, Moore, Cockrell Cummings & Axelberg, PC
P.O. Box 7370
Kalispell, MT 59904-0370
Fax: (406) 756-6533

MICHAEL J. MELDAHL

_____

Dana Christensen
Christensen, Moore, Cockrell Cummings & Axelberg, PC
P.O. Box 7370
Kalispell, MT 59904-0370
Fax: (406) 756-6533

S-3

SIGNATURE PAGES TO MASTER
SETTLEMENT AGREEMENT

_____

Dana Christensen
Christensen, Moore, Cockrell Cummings & Axelberg, PC
P.O. Box 7370
Kalispell, MT 59904-0370
Fax: (406) 756-6533

JERROLD P. PEDERSON


_____

Dana Christensen
Christensen, Moore, Cockrell Cummings & Axelberg, PC
P.O. Box 7370
Kalispell, MT 59904-0370
Fax: (406) 756-6533

MICHAEL E. ZIMMERMAN


_____

Dana Christensen
Christensen, Moore, Cockrell Cummings & Axelberg, PC
P.O. Box 7370
Kalispell, MT 59904-0370
Fax: (406) 756-6533

MICHAEL J. MELDAHL


_____

Dana Christensen
Christensen, Moore, Cockrell Cummings & Axelberg, PC
P.O. Box 7370
Kalispell, MT 59904-0370
Fax: (406) 756-6533

S-3                          SIGNATURE PAGES TO MASTER
                             SETTLEMENT AGREEMENT

JOHN D. HAFFEY

Dana Christensen
Christensen, Moore, Cockrell Cummings & Axelberg, PC
P.O. Box 7370
Kalispell, MT  59904-0370
Fax: (406) 756-6533

SIGNATURE PAGES TO MASTER
SETTLEMENT AGREEMENT

KAY FOSTER

_____

Stephen D. Bell
Dorsey & Whitney, LLP
370 Seventeenth Street, Ste. 4700
Denver, CO 80202-5647
Fax: (303) 629-3450

With a copy to:

Nicole Diller
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Fax: (415) 442-1001

CARL LEHRKIND, III

_____

Stephen D. Bell
Dorsey & Whitney, LLP
370 Seventeenth Street, Ste. 4700
Denver, CO 80202-5647
Fax: (303) 629-3450

With a copy to:

Nicole Diller
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Fax: (415) 442-1001

Signature Pages to Master
                                       Settlement Agreement

DEBORAH D. MCWHINNEY

Stephen D. Bell
Dorsey & Whitney, LLP
370 Seventeenth Street, Ste. 4700
Denver, CO 80202-5647
Fax: (303) 629-3450

TUCKER HART ADAMS

_____

Stephen D. Bell
Dorsey & Whitney, LLP
370 Seventeenth Street, Ste. 4700
Denver, CO 80202-5647
Fax: (303) 629-3450

With a copy to:

Nicole Diller
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Fax: (415) 442-1001

Signature Pages to Master
Settlement Agreement

DEBORAH D. MCWHINNEY

_____

Stephen D. Bell
Dorsey & Whitney, LLP
370 Seventeenth Street, Ste. 4700
Denver, CO 80202-5647
Fax: (303) 629-3450

TUCKER HART ADAMS

Stephen D. Bell
Dorsey & Whitney, LLP
370 Seventeenth Street, Ste. 4700
Denver, CO 80202-5647
Fax: (303) 629-3450

With a copy to:

Nicole Diller
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Fax: (415) 442-1001

S-6                    Signature Pages to Master
                       Settlement Agreement

ALAN F. CAIN

Stephen D. Bell
Dorsey & Whitney, LLP
370 Seventeenth Street, Ste. 4700
Denver, CO 80202-5647
Fax: (303) 629-3450

With a copy to:

Nicole Diller
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Fax: (415) 442-1001

JOHN G. CONNORS

Stephen D. Bell
Dorsey & Whitney, LLP
370 Seventeenth Street, Ste. 4700
Denver, CO 80202-5647
Fax: (303) 629-3450

With a copy to:

Nicole Diller
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Fax: (415) 442-1001

S-7        Signature Pages to Master
Settlement Agreement

ALAN F. CAIN

_____

Stephen D. Bell
Dorsey & Whitney, LLP
370 Seventeenth Street, Ste. 4700
Denver, CO 80202-5647
Fax: (303) 629-3450

With a copy to:

Nicole Diller
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Fax: (415) 442-1001

JOHN G. CONNORS


_____

Stephen D. Bell
Dorsey & Whitney, LLP
370 Seventeenth Street, Ste. 4700
Denver, CO 80202-5647
Fax: (303) 629-3450

With a copy to:

Nicole Diller
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Fax: (415) 442-1001

Signature Pages to Master
Settlement Agreement

PAGE 04
☑ 004/006          ↦ Fax Central                    POSTNET                       7607769595        15:25   11/13/2009
                                                      11/13/2009 17:44 IFAX faxcenter.mpl@dorsey.com

NOBLE E. VOSBURG

Stephen D. Bell
Dorsey & Whitney, LLP
370 Seventeenth Street, Ste. 4700
Denver, CO  80202-5647
Fax: (303) 629-3450

With a copy to:

Nicole Diller
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Fax: (415) 442-1001

Signature Pages to Master
                                   Settlement Agreement

PPL MONTANA, LLC

By: _Vic N Lopia_

OFFICE OF
GENERAL COUNSEL
BY: JAD
DATE: 11/10/09

Name: Victor N. Lopiano
Title:   Senior Vice President

Two Ninth Street
Allentown, PA 18101
Fax: (610) 774-4455
Attn:  Victor N. Lopiano

With a copy to:

Michael Lesch
John G. Nicolich
Dewey & LeBoeuf LLP
1301 Avenue of the Americas
New York, NY 10019
Fax (212) 259-6333

SIGNATURE PAGES TO MASTER
SETTLEMENT AGREEMENT

GOLDMAN, SACHS & CO.

By: _____
    Name: Gregory K. Palm
    Title:  Managing Director

85 Broad Street
New York, NY 10004
Fax: (212) 482-3966
Attn:  Gregory K. Palm

With a copy to:

Richard C. Pepperman, II
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Fax: (212) 558-3588

THE GOLDMAN SACHS GROUP, INC.

By: _____
    Name: Gregory K. Palm
    Title:  Executive Vice President,
            General Counsel and Secretary

85 Broad Street
New York, NY 10004
Fax: (212) 482-3966
Attn:  Gregory K. Palm

With a copy to:

Richard C. Pepperman, II
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Fax: (212) 558-3588

S-11                      Signature Pages to Master
                              Settlement Agreement

8502274.18

WESTMORELAND COAL COMPANY

By: _____
     Name: Morris W. Kegley
     Title:   General Counsel and Secretary

2 North Cascade Avenue
Colorado Springs, CO  80903
Fax: (719) 448-5826
Attn:        Morris W. Kegley

With a copy to:

W. A. Forsythe
MOULTON BELLINGHAM PC
P. O. Box 2559
Billings, Montana 59103-2559
Fax: (406) 248-7889

WESTMORELAND MINING LLC

By: _____
     Name: Jennifer S. Grafton
     Title:   General Counsel and Secretary

2 North Cascade Avenue
Colorado Springs, CO  80903
Fax: (719) 448-5826
Attn:        Jennifer S. Grafton

With a copy to:

W. A. Forsythe
MOULTON BELLINGHAM PC
P. O. Box 2559
Billings, Montana 59103-2559
Fax: (406) 248-7889

S-12

8502274.18

BBI POWER CORPORATION

By: _____

Name: Paul Prager
Title: President

James H. Goetz
Goetz Gallik & Baldwin
PO Box 6580
Bozeman , MT 59771-6580
Fax:   (406) 587-5144

CES ACQUISITION CORP.

By: _____

Name: Douglas Halliday
Title: Executive Vice President

James H. Goetz
Goetz Gallik & Baldwin
PO Box 6580
Bozeman , MT 59771-6580
Fax:   (406) 587-5144

Signature Pages to
Master Settlement
Agreement

8592274.16

MILBANK, TWEED, HADLEY & McCLOY LLP

By: _____

    Name: Thomas A. Arena
    Title:  Partner

1 Chase Manhattan Place
New York, NY 10005
Fax: (212) 530-5219
Attn: Thomas A. Arena

With a copy to:

David H. Fry
Munger, Tolles & Olson, LLP
560 Mission Street
27th Floor
San Francisco, CA 94105-2907
Fax: (415) 512-4077

S-14

Signature Pages to Master
Settlement Agreement

NORTHWESTERN CORPORATION

By:  _____  1/13/09
     Name: Miggie E. Cramblit
     Title:  Vice President, General Counsel, Corporate
             Secretary and Chief Compliance Officer

NorthWestern Energy
3010 West 69th Street
Sioux Falls, South Dakota 57108
Fax: (605) 978-2919
Attn:  Corporate Secretary

With a copy to:

Stanley T. Kaleczyc
Kimberly A. Beatty
Browning, Kaleczyc, Berry & Hoven, P.C.
825 Great Northern Blvd., Suite 105
PO Box 1697
Helena, MT 59602-1697
Fax:  (406) 443-6883

CLARK FORK & BLACKFOOT LLC

By:  _____  11/13/09
     Name: Miggie E. Cramblit
     Title:  Corporate Secretary

Clark Fork & Blackfoot, LLC
c/o NorthWestern Energy
3010 West 69th Street
Sioux Falls, South Dakota 57108
Fax: (605) 978-2919
Attn:  Corporate Secretary

With a copy to:

Stanley T. Kaleczyc
Kimberly A. Beatty
Browning, Kaleczyc, Berry & Hoven, P.C.
825 Great Northern Blvd., Suite 105
PO Box 1697
Helena, MT 59602-1697
Fax:  (406) 443-6883

S-15                Signature Pages to Master
                    Settlement Agreement

8502274.18

ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

By: _____

Name:  William E. Hogan
Title:   Senior Litigation Counsel

1 Meadowlands Plaza
East Rutherford, NJ  07073
Fax: (201) 508-1297
Attn:  William E. Hogan

With a copy to:

Michael R. Goodstein
Bailey Cavalieri LLC
10 West Broad Street
Suite 2100
Columbus, OH  43215-3422
Fax: (614) 221-0479

SIGNATURE PAGES TO MASTER
SETTLEMENT AGREEMENT

TWIN CITY FIRE INSURANCE COMPANY

By: _____
Name: Anthony J. Fowler
Title:   Assistant Vice President,
Hartford Financial Products, on behalf of
Twin City Fire Insurance Company

Hartford Financial Products
2 Park Avenue, 5th Floor
New York, NY 10016
Fax: 917-464-6156
Attn:  Anthony J. Fowler

With a copy to:

Michael R. Delhagen
Tressler LLP
One Penn Plaza, Suite 4701
New York, NY 10119
Fax: (646) 833 0877

Signature Pages to Master
Settlement Agreement

CHUBB & SON, A DIVISION OF
FEDERAL INSURANCE COMPANY

By: _____

Name: Allison Rose
Title:   Senior Specialty Claims Examiner
         Assistant Vice President

555 South Flower Street, Fourth Floor
Los Angeles, California  90071
Fax: (213) 612-5731
Attn:  Allison Rose

With a copy to:

Gilbert Jensen
Musick Peeler & Garrett
One Wilshire Boulevard
Suite 2000
Los Angeles, CA 90071
Fax:  (213) 624-1376

S-18

Signature Pages to Master
Settlement Agreement

8502274.17

COUNSEL FOR SECURITIES LEAD PLAINTIFFS

BEERS LAW OFFICES

Thomas J. Beers

234 East Pine Street
Missoula, MT 59802
Fax: (406) 728-8445

COUGHLIN STOIA GELLER RUDMAN & ROBBINS

_____

Jeffrey W. Lawrence

100 Pine Street, Suite 2600
San Francisco, CA 94111
Fax: (415) 288-4534

SIGNATURE PAGES TO MASTER
SETTLEMENT AGREEMENT

COUNSEL FOR SECURITIES LEAD PLAINTIFFS

BEERS LAW OFFICES

_____

Thomas J. Beers

234 East Pine Street
Missoula, MT 59802
Fax: (406) 728-8445

COUGHLIN STOIA GELLER RUDMAN & ROBBINS

_____
Jeffrey W. Lawrence

100 Pine Street, Suite 2600
San Francisco, CA 94111
Fax: (415) 288-4534

SIGNATURE PAGES TO MASTER
SETTLEMENT AGREEMENT

COUNSEL FOR ERISA NAMED PLAINTIFFS

HAGENS BERMAN SOBOL SHAPIRO  LLP

Andrew M. Volk                                    10/13/09

1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Fax:  (206) 623-0594

With a copy to:

Jim G. Stranch III
Branstetter Stranch & Jennings
227 Second Avenue North
Fourth Floor
Nashville, TN 37201-1631
Fax: (615) 255-5419

S-20                     Signature Pages to Master
                          Settlement Agreement

PAMELA K. MERRELL

_____

J David Jackson
Dorsey & Whitney, LLP
Suite 1500
50 South Sixth Street
Minneapolis, MN  55402-1498
Fax: (925) 516-5596

ELLEN M. MARBUT

_____

J David Jackson
Dorsey & Whitney, LLP
Suite 1500
50 South Sixth Street
Minneapolis, MN  55402-1498
Fax: (925) 516-5596

R.W. COPE

_____

J David Jackson
Dorsey & Whitney, LLP
Suite 1500
50 South Sixth Street
Minneapolis, MN  55402-1498
Fax: (925) 516-5596

S-22                    Signature Pages to Master
                       Settlement Agreement

PAMELA K. MERRELL

_____

J David Jackson
Dorsey & Whitney, LLP
Suite 1500
50 South Sixth Street
Minneapolis, MN  55402-1498
Fax: (925) 516-5596

ELLEN M. MARBUT

_____

J David Jackson
Dorsey & Whitney, LLP
Suite 1500
50 South Sixth Street
Minneapolis, MN  55402-1498
Fax: (925) 516-5596

R.W. COPE

*R. W. Cope   Nov. 13, 2009*

J David Jackson
Dorsey & Whitney, LLP
Suite 1500
50 South Sixth Street
Minneapolis, MN  55402-1498
Fax: (925) 516-5596

Signature Pages to Master
Settlement Agreement